IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

  **v.**              //        **CRIMINAL NO. 1:16CR31**
                                          **(Judge Keeley)**

**ERIC SCOTT BARKER, a/k/a**
**Skateboard, a/k/a Skate,**
**RANDALL LEE BARKER, and**
**MEGAN EILEEN DUNIGAN,**

    **Defendants.**

**MEMORANDUM OPINION AND ORDER REJECTING
REPORT AND RECOMMENDATION [DKT. NO. 146] AND
<u>DENYING DEFENDANTS' MOTION TO DISMISS [DKT. NO. 83]</u>**

Pending before the Court is the motion to dismiss the indictment filed by the defendant, Eric Scott Barker ("Barker"), on September 18, 2016 (Dkt. No. 83), which was later joined by co-defendants Megan Eileen Dunigan (Dkt. No. 84) and Randall Lee Barker (Dkt. No. 87). Pursuant to 28 U.S.C. § 636(b)(1), the Court referred the motion to the Honorable Michael J. Aloi, United States Magistrate Judge, for initial review and the preparation of a Report and Recommendation ("R&R") (Dkt. No. 89).

In an R&R dated December 12, 2016, Magistrate Judge Aloi recommended that the Court grant the defendants' motion to dismiss (Dkt. No. 146). The Government filed timely objections to the R&R (Dkt. No. 148). After careful consideration, for the reasons that follow, the Court **REJECTS** the R&R (Dkt. No. 146) and **DENIES** the defendants' motion to dismiss (Dkt. No. 83).

**USA V. BARKER, ET AL.**                                              **1:16CR31**

**MEMORANDUM OPINION AND ORDER REJECTING
REPORT AND RECOMMENDATION [DKT. NO. 146] AND
DENYING DEFENDANTS' MOTION TO DISMISS [DKT. NO. 83]**

## I. BACKGROUND

**A.    Indictment and Superseding Indictment**

On May 3, 2016, the grand jury returned an indictment against the defendants (Dkt. No. 1). Each of the eleven counts alleged criminal activity involving MAM2201,[1] which the Government identified in the indictment as a Schedule I controlled substance analogue. Id. at 1. On January 4, 2017, the grand jury returned a superseding indictment charging the defendants with additional conduct related to MAM2201, as well as buprenorphine and para-fluorofentanyl (Dkt. No. 151).

Relevant to the instant motion, Count One of the superseding indictment charges the defendants with conspiracy to distribute and possess with intent to distribute MAM2201 and buprenorphine in violation of 21 U.S.C §§ 841(a)(1), 841(b)(1)(C), 841(b)(1)(E)(i), and 846. Id. at 1-2. Count Two charges the defendants with maintaining a drug involved premises for the distribution of MAM2201 in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2(a). Id. at 3. Counts Four through Fourteen charge the defendants with varying instances of distributing MAM2201 in

---

[1] The chemical structure of MAM2201 is denoted as 1-(5-fluoropentyl)-1H-indol-3-yl](4-methylnaphthalen-1-yl)methanone.

USA V. BARKER, ET AL.                                    1:16CR31

MEMORANDUM OPINION AND ORDER REJECTING
REPORT AND RECOMMENDATION [DKT. NO. 146] AND
DENYING DEFENDANTS' MOTION TO DISMISS [DKT. NO. 83]

violation of 21 U.S.C §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2(a). Id. at 5-7.

**B.   The Parties' Arguments**

At issue in this case is the constitutional validity of the Controlled Substance Analogue Enforcement Act ("Analogue Act"). 21 U.S.C. §§ 802(32)(A), 831. As discussed in more detail below, the Analogue Act defines a "controlled substance analogue" as a substance that is "substantially similar" to a Schedule I or II controlled substance in both chemical structure and actual or intended effect. United States v. Klecker, 348 F.3d 69, 71 (4th Cir. 2003). If a substance fits that definition and is intended for human consumption, it is treated as a Schedule I controlled substance. 21 U.S.C. § 813.

In his motion to dismiss, Barker argued that the entirety of the original indictment should be dismissed because the Analogue Act is void for vagueness both facially and as applied to MAM2201 (Dkt. No. 83 at 1).[2] More particularly, he asserted that "[t]he Analogue Act is void for vagueness, both facially and as applied,

---

[2] The superseding indictment charges conduct related to MAM2201 that was not contained in the original indictment. However, the additional charges do not affect the grounds of Barker's motion to dismiss.

**USA V. BARKER, ET AL.** 1:16CR31

**MEMORANDUM OPINION AND ORDER REJECTING
REPORT AND RECOMMENDATION [DKT. NO. 146] AND
DENYING DEFENDANTS' MOTION TO DISMISS [DKT. NO. 83]**

because it lacks an ascertainable standard of guilt and is therefore insufficiently definite, and because it encourages arbitrary and discriminatory enforcement." Id. at 6. Acknowledging recent Supreme Court dicta that suggests such a challenge would be in vain, see McFadden v. United States, 135 S.Ct. 2298, 2306-07 (2015), Barker nonetheless asserted that the Supreme Court's reasoning in Johnson v. United States, 135 S.Ct. 2551 (2015), may lead to a contrary conclusion (Dkt. No. 83 at 7).

According to Barker, the term "substantially similar" in the Analogue Act does not permit ordinary people to determine whether their conduct is illegal. This problem is arguably exacerbated by the fact that the Drug Enforcement Agency ("DEA") does not maintain a published list of analogues. Id. at 7-9. Alternatively, Barker contends that the Analogue Act is impermissibly vague because it does not "establish minimal guidelines to govern law enforcement." Id. at 9. Rather, it permits DEA agents to make basic policy decisions about how, and against whom, the Analogue Act will be enforced. Id. at 10-11.

The Government argues that, at least as it relates to the instant prosecution for MAM2201, the Analogue Act is not unconstitutionally vague (Dkt. No. 91 at 2). To demonstrate that

**USA V. BARKER, ET AL.**                                              1:16CR31

**MEMORANDUM OPINION AND ORDER REJECTING
REPORT AND RECOMMENDATION [DKT. NO. 146] AND
DENYING DEFENDANTS' MOTION TO DISMISS [DKT. NO. 83]**

the defendants were on notice, the Government points to various websites and a 2013 DEA publication, both of which identify MAM2201 as an analogue of AM2201 and JWH-122, each a Schedule I controlled substance. Id. at 3-4. Moreover, the Government attempts to allay concerns that the Analogue Act results in "arbitrary and discriminatory enforcement . . . at the whim of any DEA agent." Id. at 5. The Analogue Act requires "circumspect enforcement" because prosecutions depend "upon an expert scientific determination" as well as proof of a defendant's knowledge. Id. at 5-6.

After hearing argument on the motion to dismiss on November 9, 2016 (Dkt. No. 114), Magistrate Judge Aloi directed the parties to file supplemental briefs regarding the following areas of inquiry, which ultimately would form the basis of his R&R:

> 1. Statutorily and legislatively, does the Analogue Act permit prosecution <u>before</u> a Temporary Scheduling Order is published in the Federal Register?
>
> 2. Constitutionally, may the Analogue Act be applied to permit prosecution of a Defendant <u>before</u> a Temporary Scheduling Order is published in the Federal Register?
>
> 3. Under the Supreme Court's holding in <u>Johnson v. United States</u>, may a substance that has not been submitted or approved to a schedule (I, II, III, IV, V) be penalized as a Schedule I controlled substance?

(Dkt. No. 115 at 2). Not surprisingly, the Government answered each of these questions in the affirmative (Dkt. No. 128). It relied on

**USA V. BARKER, ET AL.                                    1:16CR31**

**MEMORANDUM OPINION AND ORDER REJECTING
REPORT AND RECOMMENDATION [DKT. NO. 146] AND
DENYING DEFENDANTS' MOTION TO DISMISS [DKT. NO. 83]**

the plain meaning of the statute and distinguished <u>Johnson</u> as dealing with "judge-imagined abstraction" rather than the objective standards presented in an Analogue Act prosecution. <u>Id.</u> at 4.

Barker did not respond directly to the questions; rather, he provided discovery from the case of <u>United States v. Fedida</u>, 942 F. Supp. 2d 1270 (M.D. Fla. 2013), tending to show that although, in April 2012, the DEA determined MAM2201 to be substantially similar to a Schedule I substance, it did not move to schedule MAM2201 as it did other similar chemicals (Dkt. No. 119 at 2). Barker argued that this reinforces "Due Process and constitutional notice concerns" because those reviewing the federal schedule might think that distributing MAM2201 is not criminal. <u>Id.</u>

**C.   Report and Recommendation**

By R&R dated December 12, 2016, Magistrate Judge Aloi recommended that the Court grant Barker's motion to dismiss the indictment on grounds not raised by the parties (Dkt. No. 146). In the R&R, he carefully reviewed the Analogue Act and the circumstances of its enactment as a curative measure to address the shortcomings of the Controlled Substances Act ("CSA"). <u>Id.</u> at 5-8. Noting that the Analogue Act extends the CSA framework from controlled substances to analogous substances, Magistrate Judge

**USA V. BARKER, ET AL.                                              1:16CR31**

**MEMORANDUM OPINION AND ORDER REJECTING
REPORT AND RECOMMENDATION [DKT. NO. 146] AND
DENYING DEFENDANTS' MOTION TO DISMISS [DKT. NO. 83]**

Aloi reasoned that the two must be interpreted together. He further reasoned that "[a] reading of the CSA as a whole cannot fairly support the proposition that no procedural requirements whatsoever should apply to analogues," meaning that Congress "intended for the scheduling requirements of the CSA to apply to analogues." Id. at 10.

In support of his reasoning, Magistrate Judge Aloi referenced statements by senators and representatives included in the Congressional Record when the Analogue Act was introduced in Congress. These statements establish that lawmakers were concerned about a loophole in the CSA that resulted from the delay associated with scheduling newly identified analogues. In essence, the CSA's framework allowed chemists to lawfully synthesize and distribute dangerous analogues before the DEA could complete the regulatory process of scheduling and outlawing them. Id. at 11.

Because these statements identified only the time prior to an analogue's scheduling as problematic, Magistrate Judge Aloi concluded that "Congress clearly envisioned that once the DEA had identified an analogue it would then move to schedule it as required" by the CSA's temporary and permanent procedures. Id. at 12. Magistrate Judge Aloi concluded that by failing to schedule a

**USA V. BARKER, ET AL.                                    1:16CR31**

**MEMORANDUM OPINION AND ORDER REJECTING
REPORT AND RECOMMENDATION [DKT. NO. 146] AND
DENYING DEFENDANTS' MOTION TO DISMISS [DKT. NO. 83]**

known analogue such as MAM2201 for at least four years, the DEA had failed to comply with the intent of the statute. Most importantly, he found that the DEA's failure to move for MAM2201's scheduling had undermined citizens' right to notice that the Government viewed the substance as criminal in nature. Id. at 14-18.

Finally, Magistrate Judge Aloi identified several policy concerns with the DEA's failure to schedule MAM2201, chief among them the burden that such failure places on a legal system left to determine what chemicals are "substantially similar" to scheduled substances. Id. at 19-25. In addition, he concluded that the failure to timely schedule an analogue encourages the dissemination of misleading information and deprives prospective defendants of the regulatory process provided for in the CSA. Id. at 25-28.

The Government, which filed timely objections to the R&R on December 19, 2016, argued that Magistrate Judge Aloi's "interpretation of the Analogue Act is erroneous because it (1) contradicts the plain language of the statue[;] (2) misapplies the procedural rules of the Controlled Substances Act; (3) usurps the discretionary authority of the DEA; (4) lacks any legal support; ([5]) improperly relies on legislative history; and ([6]) improperly relies on unsupported factual findings" (Dkt. No. 148 at

**USA V. BARKER, ET AL.**                                                    **1:16CR31**

**MEMORANDUM OPINION AND ORDER REJECTING
REPORT AND RECOMMENDATION [DKT. NO. 146] AND
DENYING DEFENDANTS' MOTION TO DISMISS [DKT. NO. 83]**

9). The Government further contended that, because of his focus on the DEA's failure to schedule MAM2201, the magistrate judge neglected to conduct a proper constitutional analysis of whether the Analogue Act provided sufficient notice of MAM2201's illegality. Id. at 10. It asked the Court to reject the policy considerations discussed in the R&R as immaterial to its determination of the constitutional validity of the Analogue Act as applied to MAM2201. Id. at 11.

## II. THE VOID FOR VAGUENESS DOCTRINE

The Fifth Amendment right to due process includes the guarantee that criminal statutes contain an ascertainable standard of guilt such that no citizen will be punished "under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." Johnson, 135 S.Ct. at 2556 (quoting Kolender v. Lawson, 461 U.S. 352, 357-58 (1983)). In order to punish a prohibited act, the prohibition must be clearly defined. See Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). Such a requirement permits men "of ordinary intelligence a reasonable opportunity" to choose between conduct that is lawful and unlawful. Id. The Constitution contemplates that such men not be required to

**USA V. BARKER, ET AL.**                                                1:16CR31

**MEMORANDUM OPINION AND ORDER REJECTING
REPORT AND RECOMMENDATION [DKT. NO. 146] AND
DENYING DEFENDANTS' MOTION TO DISMISS [DKT. NO. 83]**

guess at how a statute will be interpreted and applied to their actions. See Connally v. Gen. Const. Co., 269 U.S. 385, 391 (1926).

The doctrine encompasses actual notice, but "the more important aspect of the vagueness doctrine is . . . the requirement that a legislature establish minimal guidelines to govern law enforcement." Kolender, 461 U.S. at 357-58 (internal quotation omitted). Arbitrary enforcement may occur when the scope of a criminal prohibition is determined by "the moment-to-moment judgment of the policeman on his beat," thus "furnish[ing] a convenient tool for harsh and discriminatory enforcement . . . against particular groups deemed to merit . . . displeasure." Id. at 360 (internal quotation omitted).

When analyzing a statute's purported vagueness, it is critical for the Court to remember "that the mere fact that close cases can be envisioned [does not] render[] a statute vague." United States v. Williams, 553 U.S. 285, 305 (2008). Rather, "[w]hat renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." Id. at 306 (noting the vagueness of subjective judgments regarding annoyance or indecency).

10

**USA V. BARKER, ET AL.**                                      1:16CR31

**MEMORANDUM OPINION AND ORDER REJECTING
REPORT AND RECOMMENDATION [DKT. NO. 146] AND
DENYING DEFENDANTS' MOTION TO DISMISS [DKT. NO. 83]**

### III. DISCUSSION

Title 28 U.S.C. § 636(b)(1)(c) requires the Court to conduct a de novo review of those portions of a magistrate judge's R&R to which specific and timely objection is made. In light of the Government's objections, the Court will address how the Analogue Act should be interpreted, as well as whether it is impermissibly vague as applied. Klecker, 348 F.3d at 71 ("Facial vagueness challenges to criminal statutes are allowed only when the statute implicates First Amendment rights.").

**A.   The Analogue Act**

"Congress enacted the Analogue Act to prevent underground chemists from altering illegal drugs in order to create new drugs that are similar to their precursors in effect but are not subject to the restrictions imposed on controlled substances." Id. at 70. A "controlled substance analogue" is defined as a substance

> (i) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;
>
> (ii) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or

**USA V. BARKER, ET AL.**                                          1:16CR31

**MEMORANDUM OPINION AND ORDER REJECTING
REPORT AND RECOMMENDATION [DKT. NO. 146] AND
DENYING DEFENDANTS' MOTION TO DISMISS [DKT. NO. 83]**

> (iii) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.

21 U.S.C. § 802(32)(A). The Fourth Circuit's conjunctive reading of this definition requires that a substance fit within subsection (i) <u>and</u> either subsection (ii) or (iii). <u>Klecker</u>, 348 F.3d at 71. Such substances "shall, to the extent intended for human consumption, be treated, for the purposes of any Federal law as a controlled substance in schedule I." 21 U.S.C. § 813.

In addition to proving that a substance is a controlled substance analogue intended for human consumption, consistent with the knowledge requirements of the CSA "the Government must prove that a defendant knew that the substance with which he was dealing was 'a controlled substance.'" <u>McFadden</u>, 135 S.Ct. at 2305. Such knowledge can be proven either "by evidence that a defendant knew that the substance with which he was dealing is some controlled substance . . . [or] that the defendant knew the specific analogue he was dealing with," as defined by the Analogue Act. <u>Id.</u>

The Analogue Act thus is clear and unambiguous in its scope. <u>See id.</u> at 2307 (referring to the Analogue Act as "unambiguous").

**USA V. BARKER, ET AL.**                                              **1:16CR31**

**MEMORANDUM OPINION AND ORDER REJECTING
REPORT AND RECOMMENDATION [DKT. NO. 146] AND
DENYING DEFENDANTS' MOTION TO DISMISS [DKT. NO. 83]**

It directs that if a substance meets the definition of a "controlled substance analogue," 21 U.S.C. § 802(32)(A), it shall be treated as a Schedule I controlled substance to the extent that it is intended for human consumption. 21 U.S.C. § 813. Neither the Analogue Act nor the CSA requires the DEA to schedule controlled substance analogues, nor does either dictate that the Analogue Act only applies to analogous substances as a temporary measure. Congress could have incorporated such requirements into the Analogue Act, but it chose not to do so.

In light of the unambiguous extent of the Analogue Act's provisions, the Court need not consult any legislative history. See United States v. Wilder, 120 F.3d 468, 469-70 (4th Cir. 1997). Whether Congress or its members contemplated that the DEA would certainly and timely schedule all substances it identified as analogues is not the question presented. In addition, the DEA's behavior contributes little, if anything, to an analysis of whether the Analogue Act is unconstitutionally vague. As the Fourth Circuit recently noted, "there is genuine potential that the creation of [analogues] could outpace any efforts by authorities to identify and catalog them." United States v. McFadden, 753 F.3d 432, 441 (4th Cir. 2014), rev'd on other grounds, 135 S.Ct. 2298 (2015).

**USA V. BARKER, ET AL.**                                       **1:16CR31**

**MEMORANDUM OPINION AND ORDER REJECTING
REPORT AND RECOMMENDATION [DKT. NO. 146] AND
DENYING DEFENDANTS' MOTION TO DISMISS [DKT. NO. 83]**

Consequently, it declined to impose "a constitutional notice requirement that the Act contain a list of prohibited substances." Id. Tellingly, it further found "no merit" to the argument that taking "reasonable steps" to discover the legal status of a substance, such as checking the DEA's website and finding no information, could make the Analogue Act void for vagueness as applied. Id.

**B.   Void for Vagueness**

The question before the Court is whether the Analogue Act provides the constitutional safeguards of notice to citizens and minimal guidelines for law enforcement. See Kolender, 461 U.S. at 357-58. At this stage, the Court considers Barker's vagueness challenge in light of the facts of the case, which are those alleged in the indictment. See United States v. Nayak, 769 F.3d 978, 979 (7th Cir. 2014); United States v. Birbragher, 603 F.3d 478, 481 (8th Cir. 2010). Barker argues that the term "substantially similar" is not definite enough to place ordinary people on notice or to restrain law enforcement's discretion (Dkt. No. 83 at 7-8, 10-11).[3]

---

[3] A number of competing internet sources have been offered regarding notice of MAM2201's criminality (Dkt. Nos. 91 at 4; 146 at 26). It comes as no surprise that different websites might

**USA V. BARKER, ET AL.** 1:16CR31

**MEMORANDUM OPINION AND ORDER REJECTING
REPORT AND RECOMMENDATION [DKT. NO. 146] AND
DENYING DEFENDANTS' MOTION TO DISMISS [DKT. NO. 83]**

As an initial matter, Barker's argument that the Analogue Act fails to provide minimal guidelines for law enforcement is unavailing. As the Fourth Circuit has previously held, "[t]he requirement of preventing arbitrary enforcement is easily satisfied here." Klecker, 348 F.3d at 71. Under the statute, the Government must prove chemical similarity, physiological similarity, and the intent that the substance be consumed by humans. Id.

This "intent requirement alone tends to defeat any vagueness challenge based on the potential for arbitrary enforcement." Id. (citing United States v. Carlson, 87 F.3d 440, 444 (11th Cir. 1996)). In addition, the knowledge requirement of the CSA applies to analogue prosecutions, and the Supreme Court has noted that such a scienter requirement "alleviate[s] vagueness concerns, narrow[s] the scope of [its] prohibition[,] and limit[s] prosecutorial discretion." McFadden, 135 S.Ct. at 2307.

Nonetheless, following Johnson, 135 S.Ct. 2551, questions have arisen regarding whether the Analogue Act may yet fall prey to a vagueness challenge, see, e.g., United States v. Makkar, 810 F.3d 1139, 1142-43 (10th Cir. 2015) (suggesting in dictum that Johnson

---

provide inconsistent information concerning the legality of a controlled substance analogue. The constitutionality of the Analogue Act does not depend upon reference to such sources.

15

**USA V. BARKER, ET AL.                                     1:16CR31**

**MEMORANDUM OPINION AND ORDER REJECTING
REPORT AND RECOMMENDATION [DKT. NO. 146] AND
DENYING DEFENDANTS' MOTION TO DISMISS [DKT. NO. 83]**

may affect the Analogue Act's validity); such observations, however, are hardly uniform. See, e.g., United States v. Novak, 841 F.3d 721, 727 (7th Cir. 2016) (interpreting McFadden, 135 S.Ct. 2298, to hold that the Analogue Act is not unconstitutionally vague); United States v. Carlson, 810 F.3d 544, 550-51 (8th Cir. 2016) (summarily denying a vagueness challenge because "[t]he Supreme Court [had] recently determined in McFadden v. United States that the Analogue Act is not unconstitutionally vague"); see also United States v. Reulet, No. 14-40005-03-DDC, 2016 WL 7386443, *4 (D. Kan. Dec. 21, 2016); United States v. Sloan, No. 4:14CR152 RWS/NCC, 2016 WL 6989768 (E.D. Mo. Sept. 23, 2016) (report and recommendation adopted in full by the district court).

The Fourth Circuit has not addressed whether the Analogue Act is void for vagueness after Johnson. Previously, however, it has noted that whether the Analogue Act provides adequate notice admittedly is a closer question than whether it invites arbitrary enforcement. On its face, the Analogue Act provides notice that distribution of controlled substance analogues is prohibited under federal law, but "even experts can disagree about whether two molecules have chemical structures that are substantially similar."

16

**USA V. BARKER, ET AL.**                                              **1:16CR31**

**MEMORANDUM OPINION AND ORDER REJECTING
REPORT AND RECOMMENDATION [DKT. NO. 146] AND
DENYING DEFENDANTS' MOTION TO DISMISS [DKT. NO. 83]**

Klecker, 348 F.3d at 72 (holding that the Analogue Act was not void for vagueness as applied to a substance known as "Foxy").

Regardless, the Court is constrained by Fourth Circuit precedent, as well as by the Supreme Court's holding in Johnson. The Fourth Circuit and other courts of appeals consistently have rejected vagueness challenges to prosecution under the Analogue Act.[4] Johnson, while undoubtedly a landmark case, does not change the landscape of Analogue Act vagueness challenges.

In Johnson, the Supreme Court considered a vagueness challenge to the Armed Career Criminal Act ("ACCA"), which imposed enhanced penalties on certain offenders with three or more convictions for a "violent felony." 135 S.Ct. at 2555. The ACCA defined the term "violent felony" to include those that "involve[] conduct that presents a serious potential risk of physical injury to another." Id. (citing 18 U.S.C. § 924(e)(2)(B)). Prior to Johnson, the Supreme Court had defined the meaning of this "residual clause" on

---

[4] The Fourth Circuit compiled such prior cases in Klecker, 348 F.3d at 72 n.3, and it reaffirmed its reasoning in McFadden, 753 F.3d 432, rev'd on other grounds, 135 S.Ct. 2298 (2015). For other courts of appeals that have rejected vagueness challenges to the Analogue Act, see, e.g., Novak, 841 F.3d 721; Carlson, 810 F.3d 544; United States v. Berger, 553 F.3d 1107 (8th Cir. 2009); United States v. Bamberg, 478 F.3d 934 (8th Cir. 2007); United States v. Ansaldi, 372 F.3d 118 (2d Cir. 2004); United States v. Roberts, 363 F.3d 118 (2d Cir. 2004).

**USA V. BARKER, ET AL.**                                         **1:16CR31**

**MEMORANDUM OPINION AND ORDER REJECTING
REPORT AND RECOMMENDATION [DKT. NO. 146] AND
DENYING DEFENDANTS' MOTION TO DISMISS [DKT. NO. 83]**

four separate occasions. Id. at 2559. It had directed the lower courts to assess the residual clause "in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion," thus requiring judges to decide whether an abstract "ordinary case" of a crime posed "a serious potential risk of injury." Id. at 2557.

Rather than embark on "a new front of uncertainty," the Supreme Court finally declared that the residual clause of the ACCA was unconstitutionally vague for several reasons. Id. at 2559. First, it deemed the "grave uncertainty about how to estimate the risk posed by a crime" unacceptable because it tied "the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements." Id. at 2557. Further, it was unable to quantify with certainty how much risk sufficed to qualify a felony as violent. Id. at 2558.

A close reading of Johnson establishes that it was directed at a different type of vagueness than that challenged in the Analogue Act. See Reulet, No. 14-40005-03-DDC, 2016 WL 7386443, at *4 (reasoning that Johnson "specifically distinguished between the type of ambiguity in 21 U.S.C. § 802(32)(A) and the 'serious potential risk' standard used by the ACCA's residual clause"). The

**USA V. BARKER, ET AL.                                    1:16CR31**

**MEMORANDUM OPINION AND ORDER REJECTING
REPORT AND RECOMMENDATION [DKT. NO. 146] AND
DENYING DEFENDANTS' MOTION TO DISMISS [DKT. NO. 83]**

Supreme Court disapproved of applying a standard as imprecise as that contained in the residual clause to a "judge-imagined abstraction" of the "ordinary case" rather than "real-world facts." Johnson, 135 S.Ct. at 2558.

When considering how the Analogue Act defines a "controlled substance analogue," a jury is not required to consider such abstractions. The jury's determination of substantial similarity in this and any other Analogue Act case will be based on the facts of the case and very "real-world" evidence, such as chemical diagrams and expert testimony. Thus, the type of uncertainty undergirding Johnson's ruling is not present in the Analogue Act.

This is not to say that close cases will not arise. As Barker points out (Dkt. No. 83 at 8-9), whether chemicals are "substantially similar" is not always an easy determination. See Klecker, 348 F.3d at 72. However, the simple fact that an ordinary person, or a jury comprised of them, may have to wrestle with whether a substance or its effects are "substantially similar" to a controlled substance does not automatically undermine the constitutionality of the Analogue Act. See Williams, 553 U.S. at 305-06. As pointed out in Klecker, evidence of chemical structure will assist the jury with that determination. 348 F.3d at 72.

**USA V. BARKER, ET AL.**                                              1:16CR31

**MEMORANDUM OPINION AND ORDER REJECTING
REPORT AND RECOMMENDATION [DKT. NO. 146] AND
DENYING DEFENDANTS' MOTION TO DISMISS [DKT. NO. 83]**

Moreover, the Government bears the heavy burden of proving beyond a reasonable doubt that the defendants knew they were dealing with a controlled substance, thus greatly alleviating concerns about whether the Analogue Act failed to put them on notice of MAM2201's criminality. See McFadden, 135 S.Ct. at 2305.

### IV. CONCLUSION

Following a careful review of the plain meaning of the Analogue Act, as well as the arguments raised by the parties, the Court concludes that the vagueness doctrine does not raise a constitutional bar to prosecution of the defendants in this case. Therefore, it **REJECTS** the R&R (Dkt. No. 146) and **DENIES** Barker's motion to dismiss the indictment (Dkt. No. 83).

It is so **ORDERED.**

The Court **DIRECTS** the Clerk to transmit copies of this order to the defendant and counsel of record.

DATED: January 13, 2017.

>  /s/ Irene M. Keeley
> IRENE M. KEELEY
> UNITED STATES DISTRICT JUDGE